Dear Representative Birch:
This opinion is in response to your question asking:
 Is it legally permissible for Platte County to expend a portion of its sales tax revenue derived from Section 67.700, RSMo 1986, for the maintenance of roads in a special road district?
Sections 67.700 to 67.727, RSMo 1986, set up provisions regarding a capital improvements sales tax for certain counties including the county of Platte. The only provisions within those sections describing the use to which these sales tax revenues may be put are as follows:
 1. Any county, as defined in section 67.724, may, by ordinance or order, impose a sales tax on all retail sales made in such county which are subject to taxation under the provisions of sections 144.010 to 144.510, RSMo, for any capital improvement purpose designated by the county in its ballot of submission to its voters; . . . . [Section 67.700.1.]
 2. Any county imposing a sales tax pursuant to the provisions of sections 67.700 to 67.727 may contract with any other county or with any city for the construction, maintenance, or utilization of any facility or project funded in whole or in part from revenues derived from the tax levied pursuant to the provisions of sections 67.700 to 67.727. [Section 67.727.2.]
The first issue is whether the fact that the roads are in a special road district precludes the use of the tax revenues for their maintenance. The tax revenues may be spent on those roads in special road districts which are not state highways and which form a part of the county network of roads. Attorney General Opinion No. 36, Parish, January 18, 1968, a copy of which is enclosed. Furthermore, Platte County also has the legal authority to enter into contracts with other political subdivisions, such as special road districts, for the "planning, development, construction, acquisition or operation of any public improvement or facility, or for a common service, in the manner provided by law." Article VI, Section 16, Missouri Constitution of 1945. The legislature has implemented this provision with Sections 70.210 to 70.320, RSMo 1986. In Attorney General Opinion No. 4, Evans, December 9, 1966, a copy of which is enclosed, this office opined that, under these statutes, "the county court, acting for a county can contract with a special road district for maintenance of the public roads in such road district, . . . ." Id. at p. 3.
We do not find any language in Sections 67.700 to 67.727
which limits the authority of the county to expend its tax revenues on roads in special road districts by these two methods. Therefore, Platte County can directly expend revenues derived under Section 67.700 for the maintenance of roads in a special road district as long as those roads are not state highways and form a part of the county network of roads; and, the county has the authority to enter into a contract for the expenditures of monies for maintenance of those roads as long as the provisions of Article VI, Section 16, Missouri Constitution of 1945, and Sections 70.210 to 70.320, RSMo 1986, are complied with.
The second issue for resolution is whether sales tax revenues limited by Section 67.700.1 to be used "for any capital improvement purpose" may be used for "maintenance" of public roads. There are no definitions of "capital improvement" or "maintenance" provided in Sections 67.700 to 67.727. Therefore, these words must be taken "in their plain or ordinary and usual sense, . . . .". Section 1.090, RSMo 1986. In determining the plain, ordinary or usual meaning of these terms, courts have found that there is a difference between "capital improvements" and "maintenance". City of Temple v. Fulton, 430 S.W.2d 737,742 (Civ.App.Tex. 1968) (holding that while the purchase of a right-of-way for a highway was a capital improvement, maintenance of a road was not); Leavitt v. Town of North Hampton,98 N.H. 193, 96 A.2d 554, 556 (1953) ("In the absence of any definition of a capital improvement as used in the act the term `capital improvement' must be taken in its ordinary sense of a permanent improvement or betterment as distinguished from ordinary repair or current maintenance."); City of Juneau v.Hixson, 373 P.2d 743, 747 (Alaska 1962) ("`Capital', therefore, seems generally to be associated with value represented by real or personal property in some form and with relative permanency. `Improvement' in its broad sense means betterment. . . . We believe `capital' was used in the sense in which it is associated with assets in the form of real or personal property and that it was intended to connote a degree of permanency. We believe that it includes the `public works of a permanent character' such as `streets, bridges, wharves and harbor facilities . . . .'"); and Wright v. City of Palmer, 468 P.2d 326,329-330 (Alaska 1970) (reaffirming the holding in City ofJuneau, supra.). These court holdings comport with the definitions provided in Webster's Third New InternationalDictionary which are as follows:
 Improvement . . . 1.c: the enhancement or augmentation of value or quality: an increasing of profitableness, excellence, or desirability . . . 2.b: an instance of such improvement: something that improves in this way as (1): a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs — [p. 1138.]
 Maintenance . . . 4: the labor of keeping something (as buildings or equipment) in a state of repair or efficiency. [p. 1362.]
It is significant that the legislature described the general uses to which the sales tax revenues may be put with the phrase "for any capital improvement purpose" as opposed to the phrase "for capital improvements". The former phrase has a much broader meaning and is understood by this office to include maintenance of a capital improvement. The term "any", which modifies "purpose", ordinarily is all inclusive and means "every" or "all". State ex rel. Union Electric Light PowerCo. v. Public Service Commission of Missouri, 337 Mo. 419,84 S.W.2d 905, 908 (1935). Furthermore, the words "any capital improvement" modify the word "purpose". General phrases using the word "purpose" have been given broad interpretation by Missouri courts. In a dispute involving the distinction between the terms "erecting public buildings" and "building purposes," the Missouri Supreme Court stated:
 The term "erecting public buildings" as used in the Constitution [Article X, Section 11, Missouri Constitution of 1875] is less comprehensive than the term "building fund" or "building purposes" as used in the statutes, and the excess levy under the Constitution must be solely and specifically "for erecting school buildings. . . ." An increased tax rate, that is, an increase above the ordinary 40-cent rate allowed without a vote, may well be voted for building purposes, which may include any repairs, alterations, or furnishing of school buildings, or even for purchasing building sites or buildings themselves, . . . . [State ex rel. Marlowe v. Himmelberger-Harrison Lumber Co., 332 Mo. 379, 58 S.W.2d 750, 753-754
(1933).]
In another case, the same court held that the phrase "school purposes" included construction of buildings and additional classrooms as well as the operation and maintenance of schools. "The unfettered term, `school purposes,' connotes an all-inclusive meaning . . . ." Rathjen v. ReorganizedSchool District R-II of Shelby County, 284 S.W.2d 516, 524 (Mo. banc 1955). In the course of the opinion, the court quoted with approval a holding in Board of Commissioners of Roads Revenues of Twiggs County v. Bond, 203 Ga. 558, 47 S.E.2d 511,512: "On the other hand, the term, `for educational purposes,' is broad enough to cover all things necessary or incidental to the furtherance of education, . . . .". Quoted in Rathjen,supra, at 522.
In light of the above, the language in Section 67.700.1 can be interpreted to include purposes such as maintenance which preserve or further the use of capital improvements. Supportive of this interpretation is the language in Section 67.727 which relates to the use of the tax revenues authorized under Section67.700:
 2. Any county imposing a sales tax pursuant to the provisions of sections 67.700 to 67.727 may contract with any other county or any city for the construction, maintenance, or utilization of any facility or project funded in whole or in part from revenues derived from the tax levied pursuant to the provisions of sections 67.700 to 67.727. [Emphasis added.]
Even though this section relates to contracts with other counties and cities, it is not logical to infer that the legislature would have intended to limit to only those entities the use of the tax revenues for "construction, maintenance and utilization." Such an interpretation would mean that these uses would be denied to the very counties who imposed the sales tax and received the tax revenues. Rather, the enactment of this section together with Section 67.700.1 is an indication that the legislature understood the phrase "for any capital improvement purpose" in a broad sense and to include maintenance of capital improvements.
Therefore, tax revenues received under Section 67.700 may be used for the maintenance of capital improvements, including roads, as well as for their construction and utilization.
Conclusion
It is the opinion of this office that a county is authorized to expend a portion of its sales tax revenue derived from the tax authorized by Section 67.700, RSMo 1986, for maintenance of roads in special road districts, which roads are not state highways and which roads form a part of the county network of roads, either directly or by means of a contract with the special road district which contract complies with the provisions of Article VI, Section 16, Missouri Constitution of 1945, and Sections 70.210 to 70.320, RSMo 1986.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General
Enclosures:
 Attorney General Opinion No. 4, Evans, December 9, 1966 Attorney General Opinion No. 36, Parish, January 18, 1968.