## S04A1339. QUARTERMAN v. DOUGLAS COUNTY BOARD OF COMMISSIONERS et al.

(602 SE2d 651)

CARLEY, Justice.

A Special Purpose Local Option Sales Tax (SPLOST) was approved in a special referendum in Douglas County for the purpose of providing recreational facilities and roadway improvements. The Douglas County Board of Commissioners (Board) elected to finance these improvements by the issuance of revenue bonds. The Development Authority of Douglas County (Authority) authorized the bond financing and entered into an intergovernmental contract with the Board which obligated the County to repay the bonds from SPLOST proceeds or, if there was a shortfall, from any lawfully available funds. A bond validation proceeding was instituted, followed by the requisite publication of notice, and a final order authorizing the issuance was entered. No person filed any motion to intervene in that proceeding or appealed from the validation order. One and one-half years later, James Quarterman, acting pro se, filed petitions against the Board members in their official capacities and against the Authority (Appellees) for a temporary restraining order and for writs of prohibition and mandamus, seeking to restrain the SPLOST collection for repayment of the revenue bonds, to prohibit the trial court from relying on its prior approval of the bond validation, and to require Appellees to vacate the bond project and to have the bonds legally issued. Appellees moved to dismiss all claims. After a hearing, the trial court denied all relief and granted the motion to dismiss, concluding that Quarterman could not collaterally attack the judgment of validation and that the intergovernmental contract was constitutionally authorized. Quarterman appealed from this order.

The Georgia Constitution of 1983, Art. IX, Sec. VI, Par. IV "requires the General Assembly to provide for 'incontestable and conclusive' validation of revenue bonds. [Cit.]" *Ambac Indemnity Corp. v. Akridge*, 262 Ga. 773 (1) (425 SE2d 637) (1993). The General Assembly so provided by enacting the following statute:

> If no appeal is filed within the time prescribed by law or if an appeal is filed and the judgment is affirmed on appeal, the judgment of the superior court confirming and validating the issuance of the bonds and the security therefor shall be forever conclusive against the governmental body upon the validity of such bonds and the security therefor.

OCGA § 36-82-78. "This court has held consistently that this statutory provision prevents any collateral attack by the county, county

residents, or taxpayers who had proper notice of the validation proceedings but chose not to intervene. [Cits.]" *Ambac Indemnity Corp. v. Akridge,* supra at 774 (1).

The record reveals that Quarterman had both actual knowledge and statutory notice of the validation proceeding, and he does not contend otherwise. See *Ambac Indemnity Corp. v. Akridge,* supra; *Charlton Development Auth. v. Charlton County,* 253 Ga. 208, 209 (317 SE2d 204) (1984). Instead, he urges that the trial court erroneously denied his request to intervene in the validation proceeding without motion pursuant to OCGA § 36-82-77. However, the record does not contain such request or the denial thereof and, more importantly, Quarterman did not attempt to appeal from either the denial of intervention or from the validation judgment. See *Kipp v. Rawson,* 193 Ga. App. 532, 535 (4) (a) (388 SE2d 409) (1989). Compare *Hay v. Development Auth. of Walton County,* 239 Ga. App. 803 (521 SE2d 912) (1999). Had he so appealed and obtained a reversal, he could have raised on remand those issues regarding the bonds and the contract which he now argues in this Court, and he could have appealed from any subsequent adverse judgment in the trial court. *Charlton Development Auth. v. Charlton County,* supra; *Hay v. Development Auth. of Walton County,* supra at 805. Quarterman's complete failure to appeal from any order in the validation proceeding also precludes his claim, unsupported in the record, that the trial court erred in informing him that a $4.2 million surety bond would be required within ten days in order to appeal. See *Turpen v. Rabun County Bd. of Commissioners,* 251 Ga. App. 505, 507, fn. 11 (554 SE2d 727) (2001). Compare *Haney v. Development Auth. of Bremen,* 271 Ga. 403, 405 (1) (519 SE2d 665) (1999).

Rather than institute an appeal, Quarterman sought, long after expiration of the time for appeal, to mount a collateral attack on the revenue bonds and the intergovernmental contract. To the extent that he continues to challenge the bonds, such attack is proscribed by OCGA § 36-82-78. That statute likewise expressly includes within its scope the security for the bonds. If Quarterman "can not directly attack and impeach the validity of the bonds, [he] can not do so by indirection." *Brakefield v. Jarrell,* 168 Ga. 502, 503 (1) (148 SE 273) (1929). The rationale for precluding collateral attack applies equally to revenue bonds and to their security.

> This preclusion is necessary to protect the ability of governmental bodies to obtain long-term financing in the bond market. Potential purchasers would be reluctant to invest in the state's bonds without the assurance that the revenue bonds and their security are not subject to collateral attacks after a court with proper jurisdiction has entered a final

validation order. Any perceived risk in the revenue bonds as an investment would impede the ability of state and local governments to finance needed public improvement projects.

*Ambac Indemnity Corp. v. Akridge,* supra at 775 (1). The intergovernmental contract between the Board and the Authority was specifically found in the validation order to constitute a legal, valid, binding, and enforceable obligation of the County. *Ambac Indemnity Corp. v. Akridge,* supra; *Charlton Development Auth. v. Charlton County,* supra. Therefore, the judgment of validation, from which timely appeal was not filed, is conclusive on the question of the validity of the revenue bonds and the intergovernmental contract. *Ambac Indemnity Corp. v. Akridge,* supra at 774, 775 (1); *Charlton Development Auth. v. Charlton County,* supra; *Miller v. Columbus, Ga.,* 229 Ga. 234, 236 (2) (190 SE2d 535) (1972).

Quarterman argues that the County is not authorized to incur debt for a duration of more than one year in the absence of a separate, additional referendum on the revenue bonds, that the intergovernmental contract violates state constitutional and statutory provisions, and that certain subsequent conduct of the County proves the illegality of the revenue bonds and the contract. See *Haney v. Development Auth. of Bremen,* supra at 406 (3); OCGA § 36-82-10; Att'y Gen. Op. 97-30. However, even if the judgment of validation is unconstitutional, arguably void, or obtained by fraud, accident, or mistake, it cannot be collaterally attacked with respect to either the revenue bonds or their security. *Ambac Indemnity Corp. v. Akridge,* supra at 775 (2); *Turpen v. Rabun County Bd. of Commissioners,* supra at 508-509 (1). That judgment is conclusive as to the referendum and all other questions which could and should have been asserted and adjudicated during the bond validation proceedings. *Charlton Development Auth. v. Charlton County,* supra; *Gibbs v. City of Social Circle,* 191 Ga. 422, 424 (2) (12 SE2d 335) (1940); *Brakefield v. Jarrell,* supra at 504 (1). Quarterman cannot now challenge the revenue bonds or enjoin repayment pursuant to the intergovernmental contract, regardless of whether that contract was authorized under the constitutional and statutory law of this state. *Turpen v. Rabun County Bd. of Commissioners,* supra at 509 (1).

Accordingly, we affirm the judgment of the trial court dismissing all claims. Any other result would depart from settled law and "would place local financing in a precarious state." *Turpen v. Rabun County Bd. of Commissioners,* supra at 509 (1).

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 13, 2004.

James Quarterman, *pro se.*

*Hartley, Rowe & Fowler, Joseph H. Fowler, Julie K. Livingston,* for appellees.